## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNYSYLVANIA

_____

**Patrick McGlone, Sr.** :
                                          :
                      Plaintiff           :
                                          :        **Civil Action**
            VS.                           :
                                          :        **NO.**
**Philadelphia Gas Works, PGW**           :
                                          :        Jury Trial Demanded
                                          :
                      Defendant           :
_____:

## COMPLAINT

## I. INTRODUCTION

1. Plaintiff, Patrick McGlone, Sr., is an adult individual who alleges through his attorneys, Parish McCabe, PC, that his rights to be free from discrimination in employment have been violated.  Mr. McGlone, Sr. alleges that his rights to be free from discrimination because of his disability and age under the Civil Rights Act of 1964, 42 USC §2000e et seq., and under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.,* have been violated.  Mr. McGlone, Sr. claims he was retaliated against for complaining and invoking the protection of these statutes as well as for taking workers' compensation leave because of an on the job injury to his knee.  Mr. McGlone also avers breach of an express employment contract.  In support Mr. McGlone, Sr. avers that:

## II. PARTIES

2. Plaintiff, Patrick McGlone, Sr., is a 55 year old man who resides in Philadelphia County, Pennsylvania.  At all times relevant to the complaint plaintiff has been disabled and over 45 years old.

3. At all times material hereto, Plaintiff was an employee and a former employee with PGW also known as Philadelphia Gas Works, (hereinafter referred to as "Defendant PGW" or "PGW").

4. At all times material hereto, Plaintiff was an employee of PGW with a last job position of Gas Service Specialist at the Belfield Station and sent to several locations as this is a position that requires visits to residential and commercial cites in the City of Philadelphia.

5. Defendant, Philadelphia Gas Works, is a public utility, corporation or entity that maintains its principal place of business at 800 West Montgomery Avenue, Philadelphia, PA 19122

6. Defendant PGW is an entity engaged in an industry or activity affecting commerce and has over 300 employees nationwide for each working day during each of 20 or more calendar work weeks in the current or preceding year.

### III. JURISDICTION and VENUE

7. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

8. Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e, *et seq.*, the Americans With Disabilities Act ("ADA") 42

U.S.C. § 126, *et seq*., and the Americans With Disabilities Act ("ADAA"), 42

U.S.C. §12101 et seq as well as the Age Discrimination in Employment Act,

("ADEA") 29 U.S.C. § 621 et seq. Plaintiff further invokes the supplemental

jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide

claims arising under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §

951 *et seq.*

9.  Plaintiff exhausted his administrative remedies when Plaintiff submitted a verified

    dual complaint to the Pennsylvania Human Relations Commission ("PHRC") and

    the Equal Employment Opportunity Commission ("EEOC") on or about

    November 21, 2012 which received Charge No. 530-2013-00731 at EEOC

    alleging violations of age and disability discrimination law.

10. On April 3, 2015 Plaintiff received his "Dismissal and Notice of Rights" from the

    EEOC for his federal claims against Defendant. The notice is attached to this

    complaint, marked **Exhibit A** and incorporated as if stated here at length.

11. Venue is appropriately laid in the United States District Court for the Eastern

    District of Pennsylvania inasmuch as all parties regularly conduct business within

    this District and the acts complained of by Plaintiff arose herein.

## IV. <u>FACTS</u>

12. Plaintiff incorporates by reference the previous paragraphs as if the same were set

    forth more fully at length herein.

13. Plaintiff, Patrick McGlone, Sr., was employed starting December 1, 1981, injured

    on the job on January 9, 2012 and constructively discharged on September 12,

2012 from defendant PGW as a full time Gas Service Specialist lastly under the supervision of PGW employees Mark Johnson at Belfield station and Jeffrey Shapiro when plaintiff was sent to do "cadet" training.

14. At all times relevant to his employment plaintiff had an express contractual relationship with PGW pursuant to a collective bargaining and other agreements between plaintiff, PGW and plaintiff's union, the Gas Works Employees' Union of Philadelphia, Local 686, of the Utility Workers Union of America, AFL/CIO.

15. On information and belief the terms of the CBA are the same as those found in the CBA that entered into effect between these parties on May 16, 2005, hereinafter the "CBA".

16. Plaintiff McGlone was in a work environment that performed dangerous and necessary gas safety installations, inspections and other procedures for PGW customers that necessarily exposed plaintiff to danger to himself from potential explosions and fires related to the gas service that can be life threatening.

17. PGW's gas service inspection, installation and training, all of which plaintiff performed, take place under PGW's internal regulations as well as its internal bulletins including Internal Bulletin No. 212 on the procedures for PGW employees to immediately evacuate premises where gas leaks. The current version of this Bulletin No. 212 reads "If the reading is 990% LEL (2% gas) or higher, **EVACUATE (INCLUDING YOURSELF)**. Protect life first." (Emphasis in original).

18. At all times relevant to this complaint Mark Johnson at Belfield Station and Jeffrey Shapiro when he worked with cadets, served as plaintiff's supervisors and

the PGW employees who were responsible for supervising, training, supporting and ensuring the physical safety of those Gas Service Specialists like plaintiff.

19. Similarly, Shapiro was the PGW employee responsible for accommodating disabled employees in their unit such as Mr. McGlone, Sr.  On information and belief Shapiro received specific instructions from Bob Smith concerning the accommodations that plaintiff required and Shapiro, with animus, ignored these.

20. On information and belief, at all times relevant to this complaint PGW employed at least 35 specialists like plaintiff who assisted and supervised a workforce of at least 350 regular employees and several additional staff including trainees called "cadets" of the Field Service Department at PGW.

21. At all times relevant to this complaint Jeffrey Shapiro was the supervisor in charge of the department at defendant PGW and the person who decided along with defendant PGW to not provide accommodations for plaintiff, to place plaintiff in a work environment where he had to climb up and down steps to get in and out of work, to assign plaintiff to bending-intensive tasks while injured, as well as to fire him.  Shapiro, with animus, refused plaintiff's accommodations which had been instructed by Bob Smith.

22. At all times prior to his injury, plaintiff was able to perform the essential duties of the Field Service Specialist position but was not able to bend at the knee for the period of his injury.

23. At all times prior to his injury plaintiff did not perform solely knee-bending intensive procedures nor did he mostly perform these, he occasionally did.

24. Between December 1, 1981, the start of his employment at PGW and January, 9 2012, the date of plaintiff's on-the-job injury to his knee plaintiff's employment was positive and plaintiff did not believe that his job was under threat.

25. For the entire length of this employment at PGW plaintiff did not consume, solicit, procure or sell illegal drugs for himself or for any other PGW employees.

26. On information and belief, at some point towards the end of plaintiff's employment at PGW several co-workers of his became involved in as well as lost their employment as a result of procuring, selling, distributing and using illegal drugs on the job.  Mr. McGlone describes those facts in a declaration that is incorporated as if stated at length and marked **Exhibit B** which is not filed of record because it contains sensitive allegations.

27. For most of his 31 years of service to PGW, plaintiff performed daily, bending intensive gas inspection and installation procedures at PGW alongside other PGW employees.  There were also other parts of the job that did not require bending.

28. Plaintiff was able to perform these tasks because he was able to bend at the knee, something fundamental to enable plaintiff to evacuate the premises in case of a possible gas leak.  This safety of the plaintiff's person is guaranteed, among other documents, in PGW's own Internal Bulletin No. 212.

29. On or about January 9, 2012 plaintiff notified defendant PGW that he had sustained severely torn ligaments in his left knee as a work related injury.

30. Plaintiff was not able to work until May 2012 as he had knee surgery.

31. Plaintiff then returned to work, after a workers' compensation leave of absence and after having complained to others at PGW about several failed gas meters that

PGW was installing and about several drug-related issues that PGW was
experiencing.  The PGW that plaintiff returned to work in was vastly different
from the one he had left and in a significantly worse way.

32. Under Article IX, Employee Benefits, Section I of the CBA, when an employee
like plaintiff is unable to perform the essential functions of their occupation, to the
extent that the employee is able to perform "another useful occupation" the
employee will be transferred to that occupation and, in the case of plaintiff,
because he had served over 20 years, his pay would not be reduced.

33. At the time of his return to work, PGW's own worker's compensation doctors
ordered that plaintiff return to work on a "modified duty" which put the plaintiff
not in an accommodated setting but rather as a floating staff at PGW.

34. Plaintiff, then a 30 year veteran of PGW's Service Specialist workforce, then
endured a series of detrimental actions including assignments that were
demeaning, that lowered his esteem among his peers, that offended him and,
importantly, that did not accommodate his medical need to not bend at the knee.

35. PGW commenced a campaign of threatening to fire plaintiff for his perceived
participation in complaints about drug use among PGW personnel, complaints
about failures of PGW equipment and having taken workers' compensation leave.

36. PGW encouraged plaintiff to resign; to take early retirement or to simply stop
working as his disability was not being accommodated.

37. It is important to note in terms of accommodating plaintiff's disability that at least
35 other people could do his job as they had his title, that at least 350 people in
addition were going out to do repairs and gas inspections throughout Philadelphia.

Some of these activities, particularly those that required him to either bend at the knee, evacuate or both were the activities that had been limited by the plaintiff's disability. However the plaintiff could still fundamentally perform the many other tasks of his job and dispositively, was entitled to be transferred to an entirely different position within PGW.

38. Failing to accommodate the plaintiff's disability and threatening to fire him is the discrimination he endured at PGW after he returned from his injury.

39. Other factors that eventually created an unbearable environment at PGW which lead plaintiff to be constructively discharged from it include:

    a.    PGW employees threatened to fire plaintiff by incriminating him by accusing him of using or distributing drugs along with other PGW employees. The allegation that plaintiff ever took or distributed drugs is false and vehemently denied.

    b.    PGW employees encouraged plaintiff to resign because he could not bend at the knee and was thus considered useless and a burden.

    c.    PWG employees transferred plaintiff against his will to the significantly less desirable tasks of sweeping PGW floors.

    d.    PGW employees threatened plaintiff with the loss of the lifetime medical benefit for his wife and his disabled son.

    e.    PGW employees threatened plaintiff with unprecedented unsatisfactory job evaluations which would ground cause for termination and thus deprive the plaintiff of his medical benefits.

f.    Although plaintiff utilized the PGW internal grievances procedures, including complaining with Shapiro, nothing happened.

40. Plaintiff would never have resigned from PGW at that stage of his career and at that age 52 if he had not been threatened, blackmailed and bullied into resigning. PGW employees threatened plaintiff that they would falsely implicate him in an on the job drug use investigation which had caused the termination of several PGW employees. This drug use and drug dealing within PGW had no relation to the plaintiff, however, he was told by PGW that if he did not resign that would lead to his implication in the drug investigation which would result in his termination and in the termination of his lifetime medical benefits including those for his family.

41. This threat alone constructively discharged plaintiff who unwillingly chose retirement to protect the medical benefit of his family.

42. Plaintiff's younger son is disabled and is fundamentally depended on the lifetime medical benefit that he receives from PGW as his father's dependent.

43. Had he not been forced to resign plaintiff, who was approximately 52 at the time of his constructive termination, would have worked at least until age 65.

44. When he did retire, voluntarily, perhaps aged 65 or above, plaintiff would have come under the retirement and separation allowances arrangement contained in City of Philadelphia Ordinance No. 480, as amended, which is guaranteed to him under the terms of the CBA and he believes he was cheated of that benefit through the constructive discharge.

45. **Exhibit C** is the separation form that employees of PGW including Bob Smith and PGW employee "Mr. Ambrose" forced plaintiff to sign in order to avoid their threat of becoming falsely embroiled in the drug investigation that plaintiff was told was underway and in order to maintain the medical benefit for his family which plaintiff was told he would lose.

46. **Exhibit C** is proof of the constructive discharge as plaintiff would have never signed this form had he not been coerced and threatened into signing it.

47. In a pattern of failure to accommodate, failure to follow Article IX, Section 1 of the CBA, and creation of an environment that led to the plaintiff's constructive discharge, PGW often times placed plaintiff, in spite of the "modified duty" status in situations that required him to bend at the knee, which was often impossible and always extremely painful to do.  These situations included sending the plaintiff out to supervise cadets who were in training on the field figuring out how to find gas leaks in heaters and furnaces; all situations that require both the ability to bend at the knee and to evacuate in case of a leak.

48. PGW was well aware through these complaints that the plaintiff was being subjected to a continuous pattern of harassment and PGW did nothing to stop the harassment and in fact encouraged it intending to cause the plaintiff's resignation.

49. At that time plaintiff requested that defendant PGW change his duties in the Service Specialist department to exclude him from any knee bending intensive procedures; an accommodation plaintiff had observed that PGW routinely had granted to other similarly situated injured employees and which is guaranteed to him under Article IX Section 1 of the CBA.

50. Plaintiff also complained that he was being discriminated against because of his age and his disability and that PGW was treating him in a detrimental manner designed to make it impossible as well as humiliating and demeaning for him to continue to work at PGW.

51. Plaintiff provided these complaints, orally, to PGW employees including Shapiro, Bob Smith and to Union Representative Mike Hudson and Mike McDonough.

52. Plaintiff also complained to Shapiro, Hudson and Smith that other injured PGW employees, who were in the same "floating staff" situation as plaintiff while healing from workplace injuries, and who were supervised by Shapiro, were accommodated and received special treatment because they had never complained of the matters which plaintiff has stated in his declaration (**Exhibit B).**

53. Because defendant forced an injured and older Mr. McGlone, Sr. to be exposed, practically on a daily basis, to activities that required him to bend at the knee, in direct violation of his "modified duty" status, without simple and cheap accommodation that PGW provided for other similarly injured PGW employees, Mr. McGlone, Sr. became profoundly anxious not just because of the different disability and age-based treatment but also because of the risk to his ability to retire, receive a pension and maintain healthcare benefits for his wife and his younger son who is also disabled; this anxiety and hostility depressed plaintiff to the extent that he was unable to perform several major life activities including working, concentrating, eating and sleeping.

54. When PGW exposed the plaintiff to these enormous on the job risks—namely by placing him in situations that were literally explosive from which he could not

bend his knee to get back up and try to escape—PGW breached several duties it owes to all its employees including plaintiff consisting of but not limited to:

    a.    The guarantee in PGW's CBA to not place employees at risk.

    b.    PGW's own internal safety Bulletin No. 212.

    c.    Specific statutes, including 49 CRF Sec. 192.751(a), 192.605(a) and Pa code Sec. 59.33 on the requirement that PGW must protect the public (including plaintiff) from danger and including 49 CFR 192.615(a)(5), 192.605(a) with respect to sec. 192.615(a)(5) on PGW's evacuation requirements for plaintiff while at work.

55. The overwhelming feelings of sadness, loss, anger, anxiety, frustration, fear, worry and terror that plagued the last months of Mr. McGlone, Sr.' employment at PGW were not present while he performed the exact same procedures prior to his injury.  These feelings were the direct result of Mr. McGlone, Sr.' knowledge that PGW, Shapiro and others were bent on constructively discharging him from PGW and on taking away his benefits which are fundamental for his family life.

56. These terrible conditions where Mr. McGlone, Sr. had to choose between a job that was injuring his knee and humiliating him or no job that he believed would mean no pension and no health care benefits for him and his family transformed the nature of Mr. McGlone, Sr.' life into a living hell where he was almost being asked to hurt himself in order to earn a living.

57. That tension manifested itself physically in Mr. McGlone, Sr.' concurrent and sudden inability to sleep, to eat and to perform his job as a floating staff of PGW

without an overwhelming feeling of fear, sadness and anger which paralyzed his and moved his to tears as well as moved his to complain to everyone at PGW.

58. Specifically, Mr. McGlone, Sr. would experience terror and anxiety attacks as soon as he saw Shapiro and other PGW employees conspiring to constructively discharge him. These attacks caused his heart to beat fast, his hands to tremble, his breathing to become short, his head to hurt and his hands to sweat. He felt sad and discriminated against. He felt unworthy. These symptoms impeded Mr. McGlone, Sr. from performing major life activities in a serious manner.

59. Mr. McGlone, Sr. had experienced none of these symptoms for all the many years he performed his job as a Gas Service Specialist because he was not afraid of permanently injuring his knee, or worse, of permanently losing his pension and the healthcare benefits that are basic for his family's survival.

60. The regulations state this depression, anxiety and terror that impaired Mr. McGlone, Sr.' ability to work, eat and sleep is a disability per se at 29 C.F.R. Sec. 1630.2(j) (3).

61. In addition Mr. McGlone was under medically-ordered "modified duty" because he was still healing from a serious on the job injury to his knee which is also a disability.

62. The defendant's callousness created these overwhelming conditions in Mr. McGlone, Sr.' life and they were present only for the term of plaintiff's employment while injured in his knee clearly limiting several of his major life activities including being able to work. 29 C.F.R. Sec. 1630.2(i) specifically lists "working" as a major life activity.

63. PGW had a choice of at least 35 other technicians to cover the supervision of cadets that forced a disabled plaintiff to accompany an untrained employee into live, on the field situations that required plaintiff to bend at the knee, which meant the plaintiff could not get back up because of the injury to his knee, and which could have prevented the plaintiff's evacuation as guaranteed under PGW procedures in Internal Bulletin No. 212 in the case of a gas leak emergency.

64. The fact that PGW intensified its age discrimination and its failure to accommodate Mr. McGlone, Sr.' injury in the manner they had accommodated the injuries of other younger men working at PGW's many units, once Mr. McGlone, Sr. complained significantly contributed to the feelings of anxiety, loss, depression and helplessness that so radically affected Mr. McGlone, Sr.' life during the last months of his employment at PGW and directly impaired major activities of his life like sleeping, working and his eating habits all of which became extremely difficult.

65. Mr. McGlone, Sr. also stated to Shapiro that this different treatment was unfair because it was not how others had been treated and then requested that he at least be accommodated so he could continue to work in the supervision of cadets without having to bend at the knee.

66. PGW simply refused this accommodation.

67. As a result every time Mr. McGlone, Sr. went out on the field supervising cadets while injured, he experienced two forms of discrimination, first he was discriminated based on his disability as she was the only injured employee who was still scheduled to do cadet supervision duty, second he was discriminated

because of his disability for the PGW bulletins and applicable federal regulations themselves inherently state that a person who cannot evacuate a suspected gas leak is not supposed to be there.

68. Between May 2, 2012, the date of his return to work with medical restriction to not bend at the knee and September 12, 2012 plaintiff was forced to perform daily knee-bending, personal safety risking, pain producing work when he could have done something else and when many others could have done the work that the plaintiff was being forced to do with the full knowledge of defendant.

69. Defendant PGW was aware of plaintiff's disability, of the availability of other work and other staff that could accommodate plaintiff, and of the reality that plaintiff could not get back up from the floor when he bent to help a cadet examine a gas appliance for leaks with or without the risk of dying in an explosion from a potential gas leak.

70. If fact, as stated in Internal Bulletin No. 212 it was defendant PGW's responsibility to protect staff from gas explosions and to maintain them in a work environment that protected "life first".

71. PGW also retaliated against plaintiff in the fact that PGW actually intensified the taxing nature of the knee bending procedures assigned to plaintiff. PGW employees, including Shapiro, who on information and belief drew up a daily assignment schedule for the cadet supervisors including plaintiff, assigned plaintiff to procedures that forced the injured plaintiff to be on his feet and bend at the knee for several hours at a time. This was not the same pattern of assignments

that Shapiro had given plaintiff before he was injured. This was also not the same

pattern of assignments Shapiro gave to non-injured employees in plaintiff's rank.

72. Plaintiff suffered extreme emotional distress as a result, cried daily, felt depressed

daily, felt undermined daily, feared the work place daily as he had the legitimate

expectation that he would find a gas leak, not be able to get up, and die in an

explosion. There is a painful history of PGW employees dying in explosions.

73. On or about September 12, 2012 Mr. McGlone, Sr. had his last day of work for

defendant PGW because defendant constructively discharged him as averred in

Nos. 35, 36, 38, 39 a- - f, 40, 44, 46, 47 and 55 of this complaint.

74. Shaken to the core, crying, depressed and humiliated, Mr. McGlone, Sr. walked

out of the PGW building.

75. The fact that defendant fired Mr. McGlone, Sr. approximately 33 days after he

presented PGW with another medical note restricting his duty to light duty with

no knee bending is one more instance of retaliation for engaging in that protected

conduct as guaranteed under Pennsylvania law for worker's compensation injuries.

The note, from Pain and Spite Treatment Center is dated August 9, 2012 and is

attached as **Exhibit D**.

76. As retaliation after plaintiff's complaints that he was not being treated fairly like

other non-injured, or non worker's compensation leave taking employees were,

PGW intensified the number of times plaintiff was placed in work environments

where he had to bend his knee and where he could have been trapped in a gas leak

without the ability to evacuate. In retaliation for these complaints PGW also

engaged in the detrimental actions that led to plaintiff's constructive discharge

and which are stated in Nos. 35, 36, 38, 39 a- - f, 40, 44, 46, 47 and 55 of this complaint.

77. Plaintiff tried on numerous occasions to meet with PGW to explain and seek to understand why Shapiro and others had created and retaliated with such hostility and to inquire about the threats that medical insurance would be withdrawn from his family if the plaintiff did not resign.

78. Plaintiff specifically avers that defendant PGW constructively discharged him which is evidence of their discrimination against his based on his disability, his age and his complaints about it.

79. Plaintiff avers that his constructive discharge was solely the result of defendant PGW's absolute hostility towards his age, his disability and his having taken a workers' compensation leave to heal his knee.

80. Plaintiff avers that his constructive discharge was also the result of defendant PGW's retaliation for his complaints to them on their refusal to accommodate his injured knee.

## COUNT I

## AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 2601, *et seq*

## DISABILITY BASED DISCRIMINATION

81. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

82. At all material times, Plaintiff has been subjected to adverse employment action with Defendant PGW based on his disability, including but not limited to failure to accommodate, promote and eventual termination.

83. The aforementioned discrimination was based solely on Plaintiff's disability status which prevented him from engaging in major life activities.

84. It is believed and averred that Defendant PGW instigated and/or knew or should have known of the plaintiff's need for accommodations and that PGW denied them which created a hostile work environment for Plaintiff.

85. The failure to provide the very reasonable accommodations the plaintiff sought from PGW constituted employment practices which are made unlawful by the Americans With Disabilities Act.

86. These accommodations are also guaranteed to the plaintiff under his CBA which guarantees that a PGW employee who is injured will be transferred to a position where the employee can do some work that does not involve the injury.

87. As a direct and proximate result of Defendant's unlawful employment practices and disregard for Plaintiff's rights and sensibilities under the ADA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among his friends and co-workers, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

88. The above-mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiff's federally protected rights, therefore justifying the imposition of punitive damages.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.  Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendant's unlawful discrimination;

b.  Compensatory damages;

c.  Punitive damages;

d.  Emotional pain and suffering;

e.  Reasonable attorney's fees;

f.  Recoverable costs;

g.  Pre and post judgment interest; and

h.  An allowance to compensate for negative tax consequences if any.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT, 43 PS §§ 951-963

### HANDICAP OR DISABILITY BASED DISCRIMINATION

89. Plaintiff incorporates by reference the previous paragraphs as if the same were set
forth more fully at length herein.

90. At all material times, Plaintiff has been subjected to adverse employment action
with Defendant PGW based on his handicap or disability status, including but not
limited to failure to accommodate, promote and termination.

91. The aforementioned discrimination was based solely on Plaintiff's need for
accommodation and disability status.

92. It is believed and averred that Defendant PGW instigated and/or knew or should
have known of the plaintiff's need for accommodations and that PGW and Mr.
Shapiro and Mr. Smith in particular as the decision makers denied them forcing a
hostile work environment for Plaintiff.

93. The failure to treat plaintiff as other non-work restricted as well as other non-
disabled employees had been treated as well as the failure to provide

accommodations constituted employment practices which are made unlawful by the Pennsylvania Human Relations Act.

94. As a direct and proximate result of Defendants' unlawful employment practices and disregard for Plaintiff's rights and sensibilities under the PHRA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among his friends and co-workers, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

95. The above-mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiff's protected rights, therefore justifying the imposition of punitive damages.

**WHISEFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.  Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendants' unlawful discrimination;

b.  Compensatory damages;

c.  Punitive damages;

d.  Emotional pain and suffering;

e.  Reasonable attorney's fees;

f.  Recoverable costs;

g.  Pre and post judgment interest; and

h.  An allowance to compensate for negative tax consequences if any.

### COUNT III

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 as AMENDED BY THE AMERICANS WITH DISABILITIES ACT

### RETALIATION

96. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

97. Plaintiff engaged in protected conduct when he conveyed to his supervisor Shapiro, to Smith, to PGW's own medics and to defendant that he was injured and that he required reasonable accommodations to continue to perform his job which his doctors prescribed should preclude knee bending.

98. Plaintiff simply requested a standard accommodation like that routinely granted to those PGW employees with injuries that prevented them from bending.  PGW's response to the accommodation request was to punish plaintiff by ignoring it and demoting him and retaliating against plaintiff.

99. The accommodation that plaintiff was entitled to under the CBA involved transferring him to a position that did not require him bending at all.

100.    Plaintiff further engaged in protected activity when he spoke with PGW' Human Resources and stated that they were discriminating against plaintiff, and only plaintiff, based on his disability and injury which made it impossible for plaintiff to work at PGW.

101.    At that time plaintiff informed PGW's human resources that they were making plaintiff the victim of a pattern of antagonism and hostility based solely on plaintiff's complaining about harassment, hostility, different treatment and failure to accommodate because of his protected status because of his injury, his peers and his supervisors commenced the actions that ground his constructive

discharge and which are themselves detrimental action as stated in Nos. 35, 36, 38, 39 a – f, 40, 44, 46, 47 and 55 of this Complaint.

102.    As a result of these complaints defendant PGW actually treated plaintiff worse than before the complaint and intensified the hostility in the workplace in a manner that would have deterred plaintiff from complaining in the first place.

103.    Plaintiff also suffered adverse employment action because he was constructively terminated at the same time as he engaged in the protected conduct of filing or attempting to file a grievance with his Union.

104.    As a result plaintiff has suffered adverse employment actions in the form of failure to accommodate, unwarranted discipline, uneven application of discipline, harassment and eventual termination through constructive termination.

105.    The adverse employment actions are a direct result of the plaintiff's engagement in the protected activities on his behalf as he accused a PGW of discriminating against him as an injured, disabled older Service Specialist.

106.    As a direct and proximate result of Defendant's unlawful employment practices and disregard for the Plaintiff's rights and sensibilities, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among his friends and co-workers, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

107.    The above mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiff's federally protected rights, therefore justifying the imposition of punitive damages.

**WHISEFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.   Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendant's unlawful discrimination;

b.   Compensatory damages;

c.   Punitive damages;

d.   Emotional pain and suffering;

e.   Reasonable attorney's fees;

f.   Recoverable costs;

g.   Pre and post judgment interest; and

h.   An allowance to compensate for negative tax consequences if any.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT, 43 PS §§ 951-963

### RETALIATION

108.     Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein and particularly all the allegations in Count No. III of the Complaint.

109.     Plaintiff engaged in protected conduct when he complained after he notified both PGW and Mr. Shapiro that he was injured and that he required the same accommodations that other injured employees had received from PGW which were being denied to the plaintiff.

110.     Plaintiff complained personally to PGW's medics, to Mr. Shapiro and PGW Human Resources about the failure to grant the requested standard accommodation.  Plaintiff was then treated in a worse manner by both Mr. Shapiro and PGW because of his complaint.

111.     As a result of these complaints defendant PGW, Shapiro and several other PGW employees actually treated plaintiff worse than before the complaint and intensified the hostility in the workplace in a manner that would have deterred plaintiff from complaining in the first place.

112.     Plaintiff also suffered adverse employment action because he was constructively discharged under a false pretext fully one month after he presented his last note with a medical restriction for work.

113.     As a direct and proximate result of Defendant PGW's unlawful employment practices and disregard for the Plaintiff's rights and sensibilities, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among his friends and co-workers, disruption of his personal life and loss of enjoyment of the pleasures of life.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.  Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendant's unlawful discrimination;

b.  Compensatory damages;

c.  Emotional pain and suffering;

d.  Reasonable attorney's fees;

e.  Recoverable costs;

f.  Pre and post judgment interest; and

g.  An allowance to compensate for negative tax consequences if any.

**COUNT V**
**AGE DISCRIMINATION IN EMPLOYMENT ACT ADEA 29 U.S.C. §623**
**AGE BASED DISCRIMINATION**

114.     Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

115.     At all material times, Plaintiff has been subjected to adverse employment action with Defendant PGW based on his age which is and has been over 40 years old, including but not limited to failure to promote demotion and termination from a position she was eminently qualified for.  On information and belief, Plaintiff's replacement at this position is substantially younger than plaintiff.

116.     The aforementioned discrimination was based on Plaintiff's age.

117.     It is believed and averred that Defendant PGW instigated and/or knew or should have known of the offensive ageist treatment which created a hostile work environment for Plaintiff.

118.     The age discrimination which Plaintiff seeks to redress constituted employment practices which are made unlawful by 29 USC §623, the Age Discrimination in Employment Act.

119.     As a direct and proximate result of Defendants' unlawful employment practices and disregard for Plaintiff's rights and sensibilities under the ADEA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to back and future wage loss and loss of back and future fringe benefits.

120.    The above-mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiff's federally protected rights, therefore justifying the imposition of liquidated damages.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.  Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendant's unlawful discrimination;

b.  Back pay,

c.  Liquidated damages in the amount of double the back pay;

d.  Front pay

e.  Nominal damages;

f.  Reasonable attorney's fees;

g.  Recoverable costs;

h.  Pre and post judgment interest; and

i.  An allowance to compensate for negative tax consequences if any.

### COUNT VI
### PENNSYLVANIA HUMAN RELATIONS ACT, 43 PS §§ 951-963
### AGE BASED DISCRIMINATION

121.    Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

122.    At all material times, Plaintiff has been subjected to adverse employment action with Defendant PGW based on his age which is and has been over 40 years

old, including but not limited to failure to promote demotion and termination from a position she was eminently qualified for.

123.     On information and belief, Plaintiff's replacement at this position is substantially younger than plaintiff.

124.     The aforementioned discrimination was based on Plaintiff's age.

125.     It is believed and averred that Defendant PGW instigated and/or knew or should have known of the offensive ageist treatment which created a hostile work environment for Plaintiff.

126.     The age discrimination which Plaintiff seeks to redress constituted employment practices which are made unlawful by the Pennsylvania Human Relations Act.

127.     As a direct and proximate result of Defendants' unlawful employment practices and disregard for Plaintiff's rights and sensibilities under the PHRA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to back and future wage loss and loss of back and future fringe benefits,.

128.     The above-mentioned acts were willful, wanton, malicious and oppressive and done with reckless disregard for Plaintiff's federally protected rights, therefore justifying the imposition of liquidated damages.


**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.  Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendant's unlawful discrimination;

b.  Back pay,

c.  Liquidated damages in the amount of double the back pay;

d.  Front pay

e.  Nominal damages;

f.  Reasonable attorney's fees;

g.  Recoverable costs;

h.  Pre and post judgment interest; and

i.  An allowance to compensate for negative tax consequences if any.

### COUNT VII
### PENNSYLVANIA COMMON LAW WRONFUL DISCHARGE IN RETALIATION FOR TAKING WORKERS' COMPENSATION

129.    Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

130.    Plaintiff engaged in protected conduct when he took workers' compensation leave to heal from his on the job knee injury.

131.    Plaintiff notified both PGW that he was injured and that he required a worker's compensation leave as he would undergo surgery on his knee and then rehabilitation.  This leave is that which other injured employees had received from PGW.

132.    Plaintiff communicated the fact that he would take time off under a worker's compensation claim to PGW's medics, managers and PGW Human Resources.

133.    Plaintiff then returned to work on the medically restricted schedule described in the parts of this complaint averring failure to accommodate and the constructive discharge.

134.    Upon his return from worker's compensation leave and as a result of taking this worker's compensation leave defendant PGW and several other PGW employees actually treated plaintiff worse than they treated him before the leave and intensified the hostility in the workplace in a manner that would have deterred plaintiff from complaining in the first place as is described in the sections of this complaint dealing with the failure to accommodate and the constructive discharge.

135.    Plaintiff also suffered adverse employment action because he was constructively discharged under a false pretext fully one month after he presented his last note with a medical restriction for work.  The plaintiff's return from worker's compensation leave and the hostility are contemporaneous.

136.    Retaliation for taking worker's compensation leave is recognized in Pennsylvania common law as wrongful discharge.

137.    As a direct and proximate result of Defendant PGW's unlawful employment practices and disregard for the Plaintiff's rights and sensibilities, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among his friends and co-workers, disruption of his personal life and loss of enjoyment of the pleasures of life.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

a.    Damages in a sum to exceed $150,000.00 for past and future monetary damages as a result of Defendant's unlawful discrimination;

b.    Compensatory damages;

c.   Emotional pain and suffering;

d.   Reasonable attorney's fees;

e.   Recoverable costs;

f.   Pre and post judgment interest; and

g.   An allowance to compensate for negative tax consequences if any.

## COUNT VIII

### BREACH OF EXPRESS CONTRACT OF CONTINUED EMPLOYMENT

138.     Plaintiff incorporates by reference the previous paragraphs as if the same

were set forth more fully at length herein.

139.     Plaintiff entered into an employment contract agreement with PGW

through PGW's Collective Bargaining Agreement with its Union, "CBA".  This is

a written contract that establishes that on the job injuries entitle the employees to

transfer to a position the employee can perform without loss in pay.  Similarly

termination, discipline and demotion may not take place without cause.

140.     From the start to the end of his employment at PGW under this Contract

plaintiff carefully discharged his part of this bargain. The plaintiff was employed

at PGW for over 30 years, consistently received both good or excellent

performance evaluations and merit raises.

141.     Because of the inherently dangerous nature of plaintiff's employment his

employment contract with PGW as well as internal PGW regulations, state and

federal law guaranteed for plaintiff a number of safety procedures including those

in Safety Bulletin No. 212 on the evacuation procedure during gas leaks.

142.    The PGW employment contract and practices themselves guaranteed to

plaintiff very specific reasons for discharge—drug use being one—which again

implies a contractual agreement that the plaintiff would not be fired unless there

was good cause for it.

143.    Based on the CBA, the internal PGW safety regulations and the analogous

state and federal law as set forth in No. 53 (c), above, plaintiff had an employment

contract with defendant PGW that he would be employed by defendant PGW so

long as his performance was satisfactory, and that defendant PGW would not

discharge him without good and just cause.

144.    The contract further guaranteed transfer to any position that did not

require the plaintiff to bend at the knee as that injury took place while he was on

the job.

145.    The terms of the employment contract included, but were not limited to,

the following:

a.  Plaintiff was entitled to a grievance.

b.  Plaintiff was guaranteed a safe work environment.

c.  Plaintiff was guaranteed transfer to another position if he could no longer remain

at his present position because of an on the job injury.

d.  Plaintiff was entitled to his seniority.

e.  Defendant would not demote or discharge plaintiff without good cause and fair

warning, based on objective, reasonable job evaluations of plaintiff;

f.  Defendant would guarantee the safety of the plaintiff,

g.  Defendant would provide lifetime medical benefits to plaintiff, his wife and his disabled adult son.

146.     Plaintiff at all times fulfilled his duties and conditions under the contract and has been ready, willing, and able to continue performing them in a competent and satisfactory manner.

Notwithstanding the express promise to terminate the employment contract only for good cause, on or about September 12, 2012, defendant constructively discharged and thus terminated plaintiff's employment as averred in Nos. 35, 36, 38, 39 a – f, 40, 44, 46, 47 and 55 of this Complaint.

147.     There was no good cause to constructively discharge or otherwise terminate plaintiff's employment at PGW other than the factors that led to his constructive discharge.

148.     The plaintiff never volunteered to retire; he was constructively discharged, bullied and blackmailed into signing a retirement form against his will.

149.     Plaintiff was a good worker, had no drug-use issues and was simply recuperating from a severe on the job injury when he was constructively discharged.

150.     Absent this constructive discharge plaintiff would have worked at his job at PGW for at least another ten years.

151.     As a proximate result of defendant's breach of the employment contract, plaintiff has suffered and continues to suffer losses in earnings and other employment benefits, to his damage in an amount to be established at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief against Defendant:

1. For damages for breach of contract according to proof, including lost earnings in the past and future and for other employee benefits, past and future;

2. For compensatory damages according to proof, including lost earnings and other employee benefits and damages for emotional distress, humiliation, and mental anguish;

3. For interest on lost earnings and benefits at the prevailing legal rate from September 12, 2012;

4. For punitive damages in an amount appropriate to punish defendant and deter others from engaging in similar misconduct;

5. For reasonable attorney's fees incurred by plaintiff in obtaining the benefits due him under the employment contract with defendant;

6. For costs of suit incurred by plaintiff; and

7. For such other and further relief as the court deems proper.

Respectfully submitted,

**Parish McCabe, PC**

Dated: June 10, 2015                        _____

Raul Jauregui, Esq.
PA Bar ID No. 92366
Attorneys for Plaintiff Patrick McGlone, Sr.
PARISH MCCABE, PC
105 Rutgers Avenue
PO Box 121
Swarthmore, PA 19081
215.559.9285
RJ@ParishMcCabe.com

**PROOF OF SERVICE**

McGlone, Sr. v. PGW

COMPLAINT

I certify that I am over 18 years of age and that in accordance with the provisions of the Federal Rules of Civil Procedure and of the Commonwealth of Pennsylvania's rules for service of process, today I served on behalf of the plaintiff via PERSONAL DELIVERY to the defendant's authorized agent for service of process at the agent's address, a true and correct copy of the above referenced documents addressed to:

Jane Lamb
Risk Manager
PGW
800 West Montgomery Avenue
Philadelphia, PA 19122

Dated:  June 10, 2015

Raul Jauregui, Esq